IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01313-PSF-CBS

CAROL K. AUSTIN,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, a body politic and
corporate of the State of Colorado, acting by and through
its BOARD OF WATER COMMISSIONERS and
CHRISTOPHER R. DERMODY, in his official capacity,

      Defendants.

---

## MEMORANDUM ORDER ON DEFENDANTS' MOTION
## FOR SANCTIONS FOR PLAINTIFF'S SPOLIATION
## OF EVIDENCE

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Defendant City and County of Denver's and

Defendant Dermody's Motion for Sanctions for Plaintiff's Spoliation of Evidence (Document #

73), filed on May 19, 2006. This motion seeks the imposition of sanctions in the wake of Plaintiff

Austin's alleged failure to preserve documents and computer records relevant to Ms. Austin's

efforts to mitigate her damages. Plaintiff filed her Response to Defendants' Motion for Sanctions

on June 8, 2006. Defendants' Reply in Support of Their Motion for Sanctions was filed on June

23, 3006. The parties have agreed to waive oral argument.

On July 19, 2005, this matter was referred to the Magistrate Judge to, *inter alia*, "hear

and determine pretrial maters, including discovery and other non-dispositive matters." The court

1

has carefully considered the parties' briefs and exhibits, the applicable case law and the entire

court files, and is sufficiently advised in the premises.  For the following reasons, Defendants'

motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff Austin initiated the instant litigation on July 14, 2005, by filing a Complaint that

asserts claims for age and gender discrimination, breach of contract, violation of the Fair Labor

Standards Act, and constitutional violations under 42 U.S.C. § 1883.  Ms. Austin began her

employment in the Information Technology Department of the Denver Water Board on May 22,

1990.  She was terminated on July 12, 2005.  Plaintiff contends that over an extended period of

time, she was subjected to continuing age and sex discrimination, and forced to endure less than

favorable working conditions.  During the course of her employment, Ms. Austin filed a number

of internal complaints and grievances against the Denver Water Board, commencing on or about

January 30, 2003.  Plaintiff alleges that "as a general pattern . . . Denver Water Board and [her

supervisor], shortly after receiving such complaints and grievances, retaliated against Plaintiff and

took adverse employment actions against her."  *See* Amended Complaint, at ¶ 9.

Not surprisingly, Defendants describe a very different situation.  According to Defendants,

Plaintiff Austin "was fired for insubordination and unsatisfactory performance of job duties."

Denver Water characterizes Ms. Austin as "difficult to manage" and "incapable of performing the

tasks assigned to her without remedial training and assistance."  *See* Scheduling Order (Document

#11), at 5 and 6.  More particularly, Denver Water insists that it "exercised reasonable care to

prevent and promptly correct any unlawful behavior of its employees of which it was made

aware."  *Id.*  Defendants' original Answer and Amended Answer include as an affirmative defense

2

Plaintiff's alleged failure to mitigate her damages.

Defendants filed the instant motion on May 19, 2006, arguing that "[b]y failing to retain all documents related to her efforts to obtain employment, Austin destroyed evidence relevant both to her damages claim and to Defendants' failure-to-mitigate defense. *See* Defendants' Motion for Sanctions, at 3.  As an appropriate sanction, Defendants request an order barring Ms. Austin from securing back pay for any period after January, 2006, at the latest. *Id.* at 11.

## ANALYSIS

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *United States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002). To that end, Rule 26(b) permits discovery "regarding any matter . . . that is relevant to the claim or defense of any party" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." S*ee* Fed.R.Civ.P. 26(b)(1). *See also Williams v. Board of County Commissioners*, 192 F.R.D. 698, 702 (D. Kan. 2000) (a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense).

To ensure that the expansive discovery permitted by Rule 26(b)(1) does not become a futile exercise, parties have a duty to preserve documents that may be relevant to pending or reasonably foreseeable litigation. *See Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be

relevant to future litigation").  "Spoliation" has been defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *See, e.g., West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  *See also United States v. Koch Industries, Inc.*, 197 F.R.D. 463, 482 (N.D. Okl. 1998) (acknowledging a litigant's duty "to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation").

Defendants correctly note that the court has inherent power to impose sanctions for the destruction or loss of evidence.  *See, e.g., Millsap v. McDonnell Douglas Corp.*, 162 F. Supp.2d 1262, 1309 (N.D. Okla. 2001).  *See also Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 631 (D. Utah 1998) (recognizing a court's inherent power and authority under Fed.R.Civ.P. 37(b)(2) to sanction a litigant "who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information"), *judgment aff'd in part and rev'd in part on other grounds*, 222 F.3d 1262 (10th Cir. 2000); *Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D. Minn. 1989) (holding that sanctions are appropriately levied when a party is on notice that documents in its possession are relevant to pending or potential litigation, but still abrogates its duty of preservation).

It is undisputed that Plaintiff failed to preserve materials relevant to this litigation.  During her deposition on April 3, 2006, Ms. Austin conceded that "[t]here were a number of things I had, and I deleted some of those . . . I hadn't kept everything" relating to her post-termination job search.  *See* Deposition Testimony of Carol Austin, at 68, attached as Exhibit B to Defendants' Motion for Sanctions.  Ms. Austin explained that she deleted materials "for space reasons on my

PC" and because she "did not know that I would be called upon to furnish a comprehensive list of every contact I made and every application that I had filled out or I had sent either through e-mail or through the mail." *Id.* at 71.  Plaintiff conceded that she may have deleted e-mail records regarding possible positions in those instances where she sent an inquiry or application for which she never received a response.  Ms. Austin indicates there were "many times they did not get back to me."  *See* Deposition Testimony of Carol Austin, at 76, attached as Exhibit 2 to Plaintiff's Response.

In exercising its discretion to fashion an appropriate sanction for spoliation, the court must consider the culpability of the responsible party and whether the evidence was relevant to prove an issue at trial.  *See Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 862-63 (10th Cir. 2005) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)).  To that end, this court will apply a three-step analysis.  First, the court must determine whether the missing documents or materials would be relevant to an issue at trial.  If not, then the court's analysis ends there.  If the missing documents would be relevant, the court must then decide whether Plaintiff was under an obligation to preserve the records at issue.  Finally, if such a duty existed, the court must consider what sanction, if any, is appropriate given the non-moving party's degree of culpability, the degree of any prejudice to the moving party, and the purposes to be served by exercising the court's power.  Sanctions serve to punish and deter the spoliator, promote accurate fact finding by the court or jury by remedying any evidentiary imbalance caused by the spoliatoin, and compensate the injured party for any expenses and costs incurred as a result of the misconduct.  *See United States ex rel. Koch v. Koch Industries, Inc.*, 197 F.R.D. 488, 490 (N.D. Okl. 1999).

The relevance of the missing records and Plaintiff's duty to preserve those records is self-evident.  Defendants' First Set of Interrogatories asked for "all facts relating to your attempts to mitigate your damages in this case, including any attempt to secure employment after your discharge from Denver Water."  *See* Exhibit C attached to Defendants' Motion for Sanctions.  Defendants' First Set of Requests for Production of Documents sought all documents "in your possession that have anything to do with . . . your responses to the above interrogatories," and all documents "having anything to do with" Plaintiff's attempt to mitigate her damages, "including documentary evidence about each job opportunity you pursued, cover letters, applications, inquiries and resumes submitted."  *Id.*  Plaintiff's Response to the pending motion does not contest the relevance of the missing documents.[1]

> While a successful [Title VII] plaintiff may be entitled to an award of back pay, a plaintiff must make a reasonable and good-faith effort to mitigate such damages. This mitigation usually takes the form of replacement employment.  The defendant-employer bears the burden of showing a lack of reasonable diligence. The Tenth Circuit has held that a defendant-employer may meet its burden by showing "(1) that the damage suffered by plaintiff could have been avoided, *i.e.*, that there were suitable positions available which plaintiff could have discovered and of for which [she] was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position"

*Franco v. Unified School District No. 437*, 2002 WL 538817, * 2 (D. Kan. 2002), (internal citations omitted).[2]  Defendants contend that Plaintiff's destruction of evidence has substantially

---

[1]*See* Fed.R.Evid. 401 ("'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

[2]"[A] wrongfully-discharged employee is only required to make a reasonable effort to mitigate damages and is not held to the highest standard of diligence.  This burden is not onerous, and does not mandate that the plaintiff be successful in mitigating the damage. . . . The reasonableness of the effort to find substantially equivalent employment should be evaluated in light of the individual's background and experience and the relevant job market."  *National Labor*

prejudiced their ability to show that Ms. Austin did not act reasonably in her post-termination job search.

Weighing all of the information presented in the parties' briefs and the case file, I conclude that with the filing of Defendants' initial Answer on September 15, 2005, Plaintiff and her counsel were on notice that Defendants were alleging that "Plaintiff failed to mitigate her alleged damages." At the very latest, as of September 15, 2005, Plaintiff had a duty to preserve evidence relevant to Defendants' mitigation defense. *Cf. Sprint Communications Co. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 619 (D. Kan. 2006) (notice pleading provides a party with a basis for preserving relevant evidence). The record further demonstrates that by late November 2005, Ms. Austin had received a copy of Defendants' First Set of Interrogatories and Requests for Production of Documents, which specifically sought information concerning Plaintiff's attempts to mitigate her damages in this case. *See Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991) (noting that a party is on notice of their duty to preserve evidence once a discovery request has been served).

A.      Intent

More problematic in this case is the issue of intent. Common sense suggests that a failure to produce or preserve relevant evidence may involve conduct that falls "along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002). *See also Anderson v. Cryovoc, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988) ("[n]ondisclosure comes in different

_____

*Relations Board v. Seligman and Associates, Inc.*, 808 F.2d 1155, 1165 (6th Cir. 1986), *quoting NLR v. Westin Hotel*, 758 F.2d 1126, 1129-30 (6th Cir. 1985).

shapes and sizes; it may be accidental or inadvertent, or considerably more blameworthy").

In *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997), the Tenth Circuit held

that "the bad faith destruction of a document relevant to proof of an issue at trial gives rise to an

inference that production of the document would have been unfavorable to the party responsible

for its destruction."  In the same decision, the Tenth Circuit further reasoned that no adverse

inference should arise where the destruction of a document resulted from mere negligence,

because only bad faith would support an "inference of consciousness of a weak case."  *Id.*[3]

> 'Bad faith' is the antithesis of good faith and has been defined in the cases to be
> when a thing is done dishonestly and not merely negligently.  It is also defined as
> that which imports a dishonest purpose and implies wrongdoing or some motive of
> self-interest.

*Attorneys Title Guaranty Fund v. Goodman*, 179 F. Supp.2d 1268, 1277 (D. Utah 2001).  *Cf.*

*United States v. Heiser*, 2006 WL 1149254, *11 (M.D. Pa. 2006) (holding that "'bad faith' with

respect to destruction of evidence requires more than mere negligence, it requires ill-will towards

[the defendant] or a conscious effort to frustrate his defense").  Defendants' motion challenges

Plaintiff's spoliation of evidence related to the Allari job offer, as well as her failure to preserve

computer records showing contacts with other potential employers.  In Defendants' view, a

"highly educated woman and a sophisticated computer professional" such as Ms. Austin must

have destroyed these records intentionally and in bad faith.

On January 23, 2006, Plaintiff responded to Defendants' first set of written discovery.

Ms. Austin listed six companies with whom she had face-to-face interviews after her termination

---

[3]The Second Circuit has held that an adverse inference instruction may be based a showing
of negligence, rather than bad faith.  *See, e.g., Residential Funding Corp. v. Degeorge Financial
Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).  This court is bound to follow Tenth Circuit precedent.

on July 12, 2005, and identified another 14 entities to whom she had sent inquiries or applications. *See* Plaintiff's Responses to Defendants' First Set of Interrogatories and Requests for Production, attached as Exhibit C to Defendants' Motion for Sanctions.  Notably, Plaintiff's discovery response did not refer to Allari Solutions, Inc., notwithstanding the fact that Ms. Austin had received a written job offer from that company on or about December 7, 2005.  Plaintiff's January 23rd discovery responses also stated that she was "in the process of gathering documents evidencing efforts to seek employment" and that she would be producing those documents "within the next 5 days."  *Id.*  Plaintiff supplemented her earlier discovery responses on March 13, 2006.  At that time, she produced documents "regarding job opportunities" with 29 prospective employers.  Again, there was no specific reference to Allari Solutions, Inc.  *See* Plaintiff's First Supplemental Responses to Defendants' First Set of Interrogatories and Requests for Production, attached as Exhibit D to Defendants' Motion for Sanctions.  Ms. Austin provided supplemental interrogatory responses on March 16, 2006.  Plaintiff stated that she had made "at least 135 job contacts since" her termination on July 12, 2005, and claimed to have had numerous face-to-face or telephone interviews.  Although she acknowledged that her supplemental interrogatory response did not include all of her contacts with prospective employers, Ms. Austin conspicuously failed to mention the December 7, 2005 offer from Allari.  *See* Plaintiff's Second Supplemental Responses to Defendants' First Set of Interrogatories and Requests for Production, attached as Exhibit E to Defendants' Motion for Sanctions.

Written discovery must be full and complete, and must incorporate all responsive information that is readily available.  *Cf. Steir v. Girl Scouts of the USA*, 383 F.3d 7, 14 (1st Cir. 2004) ("the spirit of the Civil Rules requires that a party be responsive, complete and

forthcoming" in its discovery responses).  I am not convinced that Plaintiff's discovery responses fully complied with this standard, particularly with respect to the Allari job offer.[4]  However, the court does not find that Plaintiff's failure to preserve relevant documents was the product of bad faith.  *Cf. Richins v. Deere and Company*, 231 F.R.D. 623, 626 (D.N.M. 2004) (the evidence upon which the movant relies to show bad faith must be more than conjecture or speculation; the movant must present evidence that would support an inference that a party actually suppressed or withheld evidence because they were conscious of a weakness in their case).  Plaintiff's discovery transgressions do not automatically equate to bad faith.  During her deposition, Ms. Austin testified that she declined the Allari offer because she questioned whether she had the necessary qualifications for the position in Boston that Allair was seeking to fill and because she feared she might have to re-locate again at the end of her first year.  Ms. Austin also testified that she deleted computer records reflecting employment inquiries that were never answered by potential employers.  While Defendants may challenge the reasonableness of Ms. Austin's actions, there is insufficient evidence to suggest that Plaintiff destroyed evidence to suppress the truth.  *Compare McMunn v. Memorial Sloan-Kettering Cancer Center*, 191 F. Supp.2d 440, 452-55 (S.D.N.Y 2002) (in imposing dispositive sanction for spoliation of evidence, found that plaintiff had committed fraud upon the court by intentionally lying during her deposition and by editing certain tapes so that they would provide stronger evidence at trial).

B.      *Appropriate Sanctions*

---

[4] The court notes in passing that sanctions under Fed.R.Civ.P. 26(g) might be appropriate where a discovery response fails to acknowledge spoliation because of counsel's failure to make reasonable inquiry.  *See Turner v. Hudson Transit Lines, Inc.*, 42 F.R.D. 68, 72 n. 2 (S.D.N.Y. 1991), citing *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 554-55 (N.D. Cal. 1087).

Defendants are seeking an order that Plaintiff "cannot secure back pay damages for any period after January, 2006, at the latest." There are two independent grounds for denying the particular relief requested. Defendants have not established bad faith on the part of Ms. Austin, which is a prerequisite for imposition of a dispositive sanction. More importantly, back pay is an equitable remedy in a Title VII action and the amount of back pay is left to the sound discretion of the District Court. *See Daniel v. Loveridge*, 32 F.3d 1472, 1477 (10th Cir. 1994). Should this case proceed to trial, the District Court will be aware of this Order and the related briefing, and may draw whatever inferences or conclusions it deems appropriate. *Cf. Thompson v United States Department of Housing and Urban Development*, 219 F.R.D. 93, 105 (D. Md. 2003) (held that adverse inference instruction was not appropriate sanction for defendants' failure to preserve and produce e-mail records, considering nature of proceeding as bench trial and fact that district judge would be aware of failure and able to draw appropriate inferences).

While this court will not grant Defendants' requested sanction, some relief is appropriate. In a non-spoliation case, the Tenth Circuit has held that the trial court should weigh several factors in determining an appropriate sanction: (1) the degree of actual prejudice to the moving party; (2) the amount of interference with the judicial process; (3) the culpability of the non-moving party; (4) whether the court warned the party in advance that a dispositive sanction would be likely for non-compliance, and (5) the efficacy of lesser sanctions. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). *See also Gates Rubber Co. v Bando Chemical Industries, Ltd.,* 167 F.R.D. 90, 101 (D. Colo. 1996). Where a non-dispositive sanction is not at issue, only the first three factors are applicable. *See Markham v. National States Insurance Co.*, 2004 WL 3019308, *12 (W.D. Okla. 2004) (a showing of willfulness or bad faith is not required where a

11

non-dispositive sanction is imposed).  In considering these factors, however, the court remains mindful of the admonition that its inherent power to sanction must be exercised with restraint and discretion.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

In determining an appropriate sanction in this case, some points should be noted. Defendants are not without facts relevant to the mitigation issue.  Since the filing of Defendants' Motion for Sanctions, Plaintiff has produced a copy of the Allari job offer.  While the court would have expected Plaintiff to produce this document offer prior to Ms. Austin's deposition on April 3, 2006, Defendants' inability to address the Allari offer in detail at that time can be remedied by allowing Defendants' to re-open the deposition at Plaintiff's expense.  Through formal discovery Ms. Austin has provided detailed, albeit incomplete, information regarding her efforts to mitigate damage.  As of March 16, 2006, Ms. Austin had identified six companies with whom she had face-to-face interviews after her termination on July 12, 2005, and identified another 20 public or private entities to whom she sent employment inquiries.  Defendants also received in discovery an April 13, 2006 e-mail from Ms. Austin cancelling an interview with RMC International. Defendants suggest that this e-mail "shows that Austin, on at least one occasion, unreasonably foreclosed employment opportunities because of her paranoid belief that Denver Water had masterminded a scheme to engage her in a sham interview process."  *See* Defendants' Reply in Support of Their Motion, at 5.  It also appears that on April 26, 2006, Plaintiff was offered and accepted a position with Kidde UTC Fire & Security in Hillsboro, North Carolina.  Ms. Austin started that employment on June 1, 2006.  I am certain that the District Court would weigh all of these facts in deciding the question of back pay.

As for Ms. Austin's admitted destruction of computer records apparently reflecting

12

unproductive contacts with other potential employers.  Plaintiff argues that Defendants have not been prejudiced by her destruction of e-mails which did not generate a response or an expression of interest from the recipient.  Ms. Austin reasons that "it is just as likely that the missing evidence was favorable to Plaintiff's obligation to prove that she made reasonable efforts to mitigate her damages."  *See* Plaintiff's Response, at 7.  To the contrary, Defendants speculate, based upon Plaintiff's April 13, 2006 e-mail cancelling the RMC International interview, "that Austin demonstrated similar irrational and counterproductive behavior in other job search contacts and the destroyed documents would have further evidenced such behavior."  *See* Defendants' Reply in Support of Their Motion, at 5.  Once again, the court notes that spoliation claims must be resolved on some basis other than pure speculation and conjecture.  *See Richins v. Deere and Company*, 231 F.R.D. at 626.  The significance, and possible implications, of Ms. Austin's April 13, 2006 email are more properly considered by the District Court in exercising its equitable power to award back pay.[5]

I find, however, that monetary sanctions are warranted in this case.  Where a party to litigation has failed to preserve relevant materials,

> an award of costs serves both punitive and remedial purposes: it deters spoliation and compensates the opposing party for the additional costs incurred.  Such compensable costs may arise either from the discovery necessary to identify alternative sources of information or from the investigation and litigation of the

---

[5]Presumably, the District Court could also bar Ms. Austin from testifying at trial about employment inquiries for which she does not have corresponding records.  *Cf. Quaglietta v. Nissan Motor Co., Ltd.*, 2000 WL 1306791, * 2-3 (D. N.J. 2000).  *See also Trull v. Volkswagen of America, Inc.*, 187 F.3d 88, 95-96 (1st Cir. 1999) (in product liability action, upholding the trial court's order suppressing plaintiff's testimony concerning the condition of seat belts, where plaintiff had acted negligently in allowing the destruction of the subject vehicle).  While such an order might serve to put the parties on a level playing field, this court is loath to intrude on the discretion of the trial judge.

document destruction itself.

*Turner v. Hudson Transit Lines*, 142 F.R.D. at 78 (internal citations omitted).  *See also Phoenix Four, Inc. v. Strategic Resources Corp.*, 2006 WL 1409413, * 9 (S.D.N.Y. 2006) (even where the court denies other forms of relief, it may still impose monetary sanctions for spoliation); *Travelers Property Casualty of America v. Pavilion Dry Cleaners,* 2005 WL 1366530. * 4 (D. N.J. 2005) (recognizing that monetary sanctions may be an appropriate sanction to punish the spoliator and to deter similar conduct).  Defendants are entitled to an award of reasonable fees and costs incurred in litigating the spoliation issue.  Defendants are also entitled to recover reasonable costs and fees that may be incurred if they elect to re-open Ms. Austin's deposition to further explore the Allari job offer in the wake of Plaintiff's belated document production.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Motion for Sanctions for Plaintiff's Spoliation of Evidence, filed on May 19, 2006, is GRANTED IN PART and DENIED IN PART. The court finds that Plaintiff failed to take appropriate steps to preserve evidence that she knew or should have known was relevant to the pending litigation.  However, the court does not find that Ms. Austin acted willfully or in bad faith and, therefore, Defendant's request for a order that Plaintiff "cannot secure back pay damages for any period after January, 2006, at the latest" is denied.  As a more appropriate sanction, Defendants may re-open Ms. Austin's deposition for the limited purpose of inquiring into the Allari job offer and the recently produced documentation relating to that offer.  Plaintiff will be liable for the reasonable fees and costs incurred by Defendants in connection with that re-opened deposition.  Defendants may also recover the reasonable fees and costs incurred in filing the instant motion and related briefs.  Defendants shall

submit a bill of fees and costs within ten (10) days of this Order.  Plaintiff may file a response

within ten (10) days of that submission.

Dated this 13th day of July, 2006.

BY THE COURT:


*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge